[Civ. No. 11267.   Third Dist.   Jan. 17, 1967.]

ORVAL SANDERS, Plaintiff and Appellant, v. COUNTY OF YUBA, Defendant and Respondent.

Changaris, Trezza, & Ithurburn and Malcolm Misuraca for Plaintiff and Appellant.

Rich, Fuidge, Dawson, Marsh, Tweedy & Morris, Dennis C. Noonan and Chester Morris for Defendant and Respondent.

PIERCE, P. J.—Appellant Orval Sanders' complaint was demurred to. The appeal is from a judgment dismissing the action against defendant county following the sustaining of a demurrer without leave to amend the counts against said county. We are not concerned on this appeal with the liability of the remaining defendants who are alleged to be agents of the county.

The complaint against the county (preceded by a claim duly

filed) is upon two theories (both expressed in one count). First it is alleged that on January 5, 1965, while plaintiff was an inmate in defendant county's jail he received an eye injury when he raised up in bed and was struck by a metal towel rack attached to the bed. This is alleged to have been a dangerous and defective condition of which defendant county had both constructive and actual knowledge but of which it negligently failed to give warning. Secondly, it is alleged that other named defendants, jailers acting within the scope and course of their employment, negligently failed to summon medical care for eight days after the accident although they had knowledge of plaintiff's need for such medical care. Because we deem the second aspect of the complaint to have merit, we consider it first.

RE THE COUNTY'S LIABILITY TO SUMMON MEDICAL CARE.

The California Tort Claims Act of 1963 (Gov. Code, § 810 et seq.) is admittedly applicable to this appeal. *On its face* section 845.6 thereof is expressly in point to cover plaintiff's complaint against the county for the failure of its agents to furnish medical care. It provides in material part:

"Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; *but,* except as otherwise provided by Sections 855.8 and 856 [which cover persons suffering from mental illness and are not here in point], *a public employee, and the public entity where the employee is acting within the scope of his employment, is [sic] liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care. . . ."* (Italics supplied.)

The portion of section 845.6 which we have italicized could not be clearer. It creates liability both in the county and in its agents, under the circumstances specified, in unambiguous language. So clear, specific and unambiguous is that language that, *standing alone,* there is nothing to interpret or construe.

Section 844.6, however, which was adopted as a part of the same act provides in material part as follows: "(a) Notwithstanding any other provisions of law, except as provided in subdivisions (b), (c), and (d) of this section, a public entity is not liable for:

"(1) An injury proximately caused by any prisoner.

"(2) An injury to any prisoner."

Nothing in any of the exceptions, subdivisions (b), (c) and (d), has any possible application here. Essentially, therefore, subdivision (a) of section 844.6 says: *"Notwithstanding any other provisions of law . . .* a public entity is not liable for: *. . . (2) An injury to any prisoner."* (Italics supplied.) In the parlance of the common law one who owes a statutory duty to an injured prisoner to take reasonable action to summon medical care and who violates that duty to the end that said injury is enhanced commits "An injury to . . . [that] prisoner." If, therefore, subdivision (a) of section 844.6 is to be interpreted within the limits of such legal parlance, the phrase: "Notwithstanding any other provisions of law," would require us to conclude there was a direct repeal by the Legislature of one provision of a single act by another provision, both having been adopted at the same time.[1]

It is to be noted that if there has been a repeal of the second clause of section 845.6 by subdivision (a) of section 844.6, a paradoxical occurrence has taken place. Although both sections were adopted as a part of the same act and at the same time, section 845.6 would ordinarily control over section 844.6, subdivision (a), under the general rule stated in *People* v. *Kuhn,* 216 Cal.App.2d 695, 701 [31 Cal.Rptr. 253], "that 'where inconsistent provisions are found in an act that provision which is latest in position in the act is deemed to express the last, final legislative intent, and prevails over prior repugnant provisions, though all are found in the same act and are intended to take effect at the same time.' (*Alameda County* v. *Dalton,* 148 Cal. 246, 251 [82 P. 1050] ; in accord: *Spreckels*

[1]Professor Arvo Van Alstyne (California Government Tort Liability (Cont. Ed. Bar) p. 609, Notes to § 845.6) reasons that this is not a *complete* repeal. He states that the heirs of a prisoner who dies as a result of a jailor's neglect in failing to summon medical aid would have a wrongful death action against the public entity. We are deferential to the views of this distinguished scholar who, as a research consultant of the California Law Revision Commission, was a principal author of the California Tort Claims Act (but not of said § 844.6, subd. (a)). We cannot accept his reasoning in this instance. By section 810.8 "injury" is defined to include "death." So defined subdivision (a) of section 844.6 (if we accept the broad interpretation noted above) must also be interpreted to say: "Nothwithstanding any other provisions of law . . . a public entity is not liable for . . . [a death] to any prisoner." Moreover, we cannot accept as reasonable an interpretation which attributes to the Legislature an intent to withhold all tort actions against the public agency in favor of the injured man himself while resurrecting the action for the benefit of his heirs if he dies. That would be a reversal of several hundred years of common law tradition, since under the common law the cause of action for negligence died with the victim. Wrongful death actions are of statutory origin. (Prosser, Torts (3d ed.) pp. 924-925.)

v. *Graham,* 194 Cal. 516, 526 [228 P. 1040] ; *Matter of Roberts,* 157 Cal. 472, 477 [108 P. 315].)'' That rule (under the assumed premise of irreconcilability) would have to fall here because of the phrase in subdivision (a) of section 844.6, "Notwithstanding any other provision of law."

We believer, however, that the two sections can be reconciled.

A reviewing court, seeking to ascertain the legislative intent, may properly rely upon the legislative history of the enactment. (*Rich* v. *State Board of Optometry,* 235 Cal. App.2d 591, 603 [45 Cal.Rptr. 512].) Therefore we follow Senate Bill 42 of the 1963 Legislative Session through its peregrinations to become the California Tort Claims Act —a codification of California law on the subject of when and under what circumstances public entities and their employees may, and when they may not, be held liable in tort. Our excursion is limited to the sections in question, section 844.6, subdivision (a), and section 845.6, and the question we seek to answer is whether the Legislature did or did not intend to repeal the latter section by the former.

Senate Bill 42 as introduced was based upon recommendations by the California Law Revision Commission. As introduced it contained *no* section 844.6. None was recommended. It did contain section 845.6, recommended by the commission.[2] The bill was amended five times in the Senate, twice in the Assembly. Section 844.6 was first added March 19, 1963. In form (at least insofar as here material) it was, and is, exactly as quoted above. The entire section was deleted on April 3, 1963, put back on April 22, 1963, and was in the bill when it passed the Senate. In the Assembly it was again deleted (on May 17, 1963) ; then reinstated (on June 15) and was in the act as finally adopted. A comment on the section in the Senate Journal for April 24, 1963, states:

"Although this section was considered and rejected by the Senate Committee on Judiciary, the section was added to the statute by the Senate Committee on Finance.

"The immunity provided to public entities by this section prevails over all other provisions of the statute. . . ."

In the meantime section 845.6 had been twice amended. As

---

[2] The comment of the commission regarding that section relates principally to the immunities of public employees respecting the furnishing of medical care to prisoners. Regarding their duties the comment states only: "This section limits the duty to provide medical care for prisoners to cases where there is actual or constructive knowledge that the prisoner is in need of *immediate* medical care."

originally introduced no express liability was declared against the public entity itself for the failure of one of its employees to furnish medical care. On March 19, 1963, the same day that section 844.6 was first included in the bill, a minor change was made in section 845.6.[3] On April 3, 1963, a more significant change was made. The public entity, by amendment, was expressly made liable to the same extent as its employee acting within the course and scope of his employment. The bill was passed both by the Senate and the Assembly with that provision in it.

This legislative history reveals a significant factor as an aid to judicial interpretation of legislative intent. We have described the "put and take" progress of section 844.6 as Senate Bill 42 journeyed through the Legislature. Each of the four times (twice in the Senate, twice in the Assembly) the section was inserted or reinserted the phrase "Notwithstanding any other provisions of law" was included. During the whole of this period the second clause of section 845.6 was retained. *Moreover, on April 3, 1963, it was strengthened by expressly providing that the public entity as well as the public employee was liable for a failure to summon medical care to a prisoner.* It is difficult to rationalize an intent to repeal a clause that has been so strengthened and thereafter adopted by both branches of the Legislature.

At this juncture in the discussion we should refer back to the first clause of section 845.6 where it refers to immunity *generally* of both the public entity and its employees for failure to furnish medical care to a prisoner. In the second clause, however, liability is narrowly limited to the particular instances: (1) where the employee knows or has reason to know of the need (2) of *immediate* medical care and (3) fails to *summon* such care. The first clause, it will be noted, as well as the second clause-exception, would both be meaningless surplusage should we give section 844.6, subdivision (a), the broad interpretation sought by respondent.

When the provisions of a statute are subject to two reasonable interpretations, the interpretation that will harmonize rather than that which will bring the two provisions in conflict should be adopted. (*People* v. *Kuhn, supra,* 216 Cal.App.2d 695, 698.) ". . . A specific provision relating to a particular subject will govern in respect to that sub-

---

[3]As the bill was originally introduced the public employee was required to "see" to it that a prisoner needing medical care received it. As amended he was required only to "summon" medical care.

ject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates." (*Rose* v. *State of California*, 19 Cal.2d 713, 724 [123 P.2d 505]; *People* v. *Superior Court*, 199 Cal.App.2d 303, 309 [18 Cal.Rptr. 557]; Code Civ. Proc., § 1859.)

The latter rule gives a clue as to how the two sections can be reconciled. If we consider that the word "injury" as used in section 844.6 in the sentence "a public entity is not liable for: . . . (2) An injury to any prisoner" was intended to embrace the physical-impact type of traumatic experience which one usually would associate with the word "injury"—particularly as applied to a prisoner—some or all of which were obviously within the legislators' contemplation since they are specifically mentioned in the same or immediately adjoining sections in the same act, then the legislative intent falls into a pattern and the two sections are not in conflict.[4]

We hold, therefore, that reading section 844.6, subdivision (a), and the second clause of section 845.6 together, and to give both meaning, the Legislature intended by its statement in the former section that: a public entity shall not be liable for an injury to any prisoner except as provided under subdivisions (b), (c) and (d) of *this* section and as hereinafter provided in section 845.6.

RE THE CONTENTION THAT SECTION 844.6,
SUBDIVISION (a), IS UNCONSTITUTIONAL.

Section 844.6, subdivision (a), *does* apply to that portion of plaintiff's complaint which alleges county liability for plaintiff's original physical-impact injury, the involvement of his eye with the towel rack. The argument that section 844.6, subdivision (a), violates equal protection (Cal. Const., art. I, § 11; U.S. Const., 14th Amend.) is unsound. Plaintiff concedes *Reed* v. *City & County of San Francisco*, 237 Cal.App.2d 23 [46 Cal.Rptr. 543], is a "spotted calf" case directly oppos-

---

[4]Distinction between physical-impact injuries and non-physical-impact injuries is not unusual in the field of torts. Injuries consisting of fright and emotional shock, even when followed or attended by physical illness, are not the subject of tort liability when such fright is because of threatened injury to a third person. (*Amaya* v. *Home Ice, Fuel & Supply Co.*, 59 Cal.2d 295 [29 Cal.Rptr. 33, 379 P.2d 513].) We do not, of course, cite *Amaya*, *supra*, in an effort to equate the emotional shock suffered by a mother with the type of injury suffered by a prisoner denied medical care. We do cite it to point out that a legislative intent to grant public entity immunity for physical-impact injuries to prisoners is quite compatible with an intent to impose liability for the type of injury alleged in the instant case.

ing his contention. He urges us to put aside stare decisis and disregard the *Reed* case. We are disinclined to follow that advice. We agree with the *Reed* case holding (that § 844.6, subd. (a), violates neither equal protection nor due process) : we agree with its reasoning: that the power of the Legislature to control public-entity immunities and liability in the tort field is very broad; that although the power may not be exercised arbitrarily it is not so exercised ''if a state of facts can be reasonably conceived to sustain it'' (i.e., if classification is reasonable) : that classification granting immunity here is reasonable because imposition of liability in actions brought by prisoners both increases the cost of law enforcement and adds to the difficulties of orderly prison administration. Both the special status of the plaintiff (a person in custody) and that of the defendant (a governmental agency) bespeak the suitability of reasonable classification. Evaluation of the particular classification of immunities and liabilities chosen by the Legslature does not rest upon the ideologies of the members of this court. Once we reach the point where we must say classification is not arbitrary, our judicial function ends. We have reached that point here. (*County of Los Angeles* v. *Superior Court,* 62 Cal.2d 839, 846 [44 Cal.Rptr. 796, 402 P.2d 868]; *Blumenthal* v. *Board of Medical Examiners,* 57 Cal.2d 228, 233 [18 Cal.Rptr. 501, 368 P.2d 101]; see also *Flournoy* v. *State of California,* 230 Cal.2d 520, 525 [41 Cal. Rptr. 190].)

The judgment is reversed with directions to permit plaintiff to amend his complaint in consonance with the views expressed herein.

Regan, J., concurred.

Friedman, J., concurred in the result.