[Civ. No. 12588. Fourth Dist., Div. One. Nov. 15, 1973.]

MICHAEL LEWIS HUGHES, Plaintiff and Appellant, v.
COUNTY OF SAN DIEGO, Defendant and Respondent.

## COUNSEL

Patricia M. Doyle and David R. Sherer for Plaintiff and Appellant.

McInnis, Fitzgerald, Rees & Sharkey, Charles W. Rees, Jr., and Reeve J. Jacques, for Defendant and Respondent.

## OPINION

**BROWN (Gerald), P. J.**—Michael Lewis Hughes, plaintiff, appeals a judgment following an order granting defendant County of San Diego's motion for nonsuit during a jury trial.

The record on appeal consists of the trial court's order and this settled statement of facts:

"(H)ughes . . . sustained injuries on . . . July 3, 1968, while a prisoner in San Diego County Jail. [He] was burned by a fire of incendiary origin. Other prisoners ignited certain polyurethane mattress inserts provided as part of the bedding in the cell occupied by [him].

"[Hughes] brought this action against . . . [the] County of San Diego, the Sheriff of San Diego County, and fictitiously named defendants. The action against the Sheriff and the fictitiously named defendants has been dismissed.

"Evidence was produced at the trial sufficient to sustain a finding that the mattress inserts provided were unusually flammable and would not have been used in a properly operated jail.

"A judgment of non-suit was ordered . . . the Court finding [Hughes] was a prisoner . . . at the time of the accident and . . . [the] County of San Diego was immune from liability by reason of Government Code of the State of California, and in particular § 844.6. . . ."

Government Code section 844.6 provides: "(a) [A] public entity is not liable for: (1) An injury proximately caused by any prisoner. (2) An injury to any prisoner.

". . . . . . . . . . . . . . . . . . . .

"(d) Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission. . . ."

Hughes contends Government Code section 844.6 is unconstitutional, denying him equal protection of the law. He argues the section irrationally distinguishes prisoners from non-prisoners.

Section 844.6 provides public entities with two immunities. The first is immunity to an action for damages proximately caused by a prisoner. The second is immunity in actions for injury where the plaintiff is a prisoner. The first immunity does not necessarily apply in this case. The prisoners' acts of setting fire to the mattress were a cause of the injuries, but proximate causation involves other factors, and there has been no determination Hughes' injuries were proximately caused by prisoners. The second immunity, on the other hand, does apply, since Hughes was a prisoner when injured. The issue here is the constitutionality of the second immunity.

The constitutionality of section 844.6 has been tested. In *Reed* v. *City & County of San Francisco,* 237 Cal.App.2d 23 [46 Cal.Rptr. 543], section 844.6 was upheld against attack on equal protection and due process grounds. The court in *Reed* did not distinguish between the section's two immunities, but the decision clearly involves the immunity based on the status of the plaintiff as an injured prisoner. The issue in *Reed,* then, was the same issue presented here.

■ Where no fundamental interest or suspect classification is involved, a statute may be overturned on an equal protection basis only if it bears no rational relationship to a conceivable legitimate state purpose (*Crownover* v. *Musick,* 9 Cal.3d 405, 429-430 [107 Cal.Rptr. 681, 509 P.2d 497]). Stated otherwise, the power of the Legislature to control governmental tort liability, although broad, may not be exercised arbitrarily (*Reed* v. *City & County of San Francisco, supra,* 237 Cal.App.2d

23, 24). In *Reed* the court upheld the constitutionality of the immunity, reasoning it served two state purposes: limiting the cost of law enforcement, and eliminating potential problems to orderly prison administration (*Reed v. City & County of San Francisco, supra,* 237 Cal.App.2d 23, 25).

Granting public entities immunity from suit by prisoners undoubtedly limits the cost of law enforcement. This justification of the statute, however, is of tenuous constitutional validity.[1] Speaking of the costs of financing state mental institutions, the California Supreme Court has held "the cost of maintaining the state institution, including provision of adequate care for its inmates, cannot be arbitrarily charged to one class in the society; such assessment violates the equal protection clause" (*Dept. of Mental Hygiene v. Kirchner,* 60 Cal.2d 716, 720 [36 Cal.Rptr. 488, 388 P.2d 720, 20 A.L.R.3d 353]). Allowing a nonprisoner to sue a public entity for his injuries, while not affording a prisoner the same privilege, is analogous to passing on to the prisoner part of the cost of adequate care of prison inmates.

■ The other rationale advanced for the immunity is the promotion of orderly prison administration. The statute allows prisoners to sue the individual prison officials for their injuries, but prevents suit against the public entity. The immunity rationally relates to the promotion of orderly prison administration in at least one way. Because he will be personally responsible for any liability he incurs, the individual prison official may be more cautious in performing his duties. This extra caution might reduce the number of prisoner injuries resulting from official misfeasance.

Hughes relies on the recent California Supreme Court case of *Brown v. Merlo,* 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212], to support his argument section 844.6 is unconstitutional. This reliance is misplaced. *Brown* held the California guest statute, which prevented a guest in an auto from suing the driver for negligent operation of the car, violated the equal protection clause. The court found there was no rational basis for distinguishing between paying and nonpaying passengers involved

---

[1] As a practical matter, it is doubtful this provision saves the public any substantial sum. Hughes points to the experience of Illinois which does not grant public entities immunity from suit by prisoners. Citing Governmental Tort Liability, 1963, Supplement to the Appendix of the Journal of the Senate, he notes Illinois during the period 1950-1960 paid total awards of $13,000, for claims against their penal system. Moreover, classifying between prisoners and nonprisoners does not seem a logical method of limiting expenses. Ordinary citizens, allowed to sue the state for their injuries, will usually have much greater damages than will prisoners, whose medical care is necessarily provided by the public, and whose earning capacity, at least during the term of their incarceration, is slight.

in traffic accidents. *Brown* demonstrates not all legislative classifications are rationally related to legitimate government purposes, but does not allow the court to substitute its judgment for that of the Legislature when a rational relationship can be shown.

*Brown* v. *Merlo, supra,* 8 Cal.3d 855 is not as directly analogous to this case as is the case of *County of Los Angeles* v. *Superior Court,* 62 Cal.2d 839 [44 Cal.Rptr. 796, 402 P.2d 868]. At issue in that case was the constitutionality of Government Code section 854.8, which prevented patients in mental wards from recovering for their injuries directly from public entities.[2] A similarly situated patient of a medical ward was allowed to sue the public entity directly. The California Supreme Court, in upholding the statute's constitutionality, stated: "In limiting governmental liability for the operation of mental institutions, the Legislature could appropriately consider the special problems of diagnosis and treatment in the field of mental illness, the problems of excessive patient load in public mental institutions that must take all patients committed to them, and the problems that may arise with respect to the competency of the mentally ill as witnesses. [Citations.] We cannot say that such factors are insufficient to justify the Legislature in treating mental patients as a class by themselves and in providing that only when they can establish the liability of specific public employees should the public agency be liable to them." (*County of Los Angeles* v. *Superior Court, supra,* 62 Cal.2d 839, 846.) All the arguments supporting section 854.8 do not apply to section 844.6, but the two sections are similar in purpose and operation. Although the immunity provided by section 844.6 may not be the wisest or best method of achieving orderly administration of the prisons, the court's function is not to determine the desirability of legislative enactments (*Griswold* v. *Connecticut,* 381 U.S. 479, 482 [14 L.Ed.2d 510, 513-514, 85 S.Ct. 1678]). Having found a rational relationship between the statute and the governmental interest, the statute is constitutional. The judicial inquiry need go no further.

Judgment affirmed.

Whelan, J., and Cologne, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 27, 1974. Tobriner, J., was of the opinion that the petition should be granted.

---

[2]At issue was the portion of section 854.8 which allowed a mental patient to recover from public entities for injuries only by establishing his claim against the individual doctor involved. Section 844.6 similarly requires the public entity to pay any judgment based on a claim against a public employee licensed in one of the healing arts. The two sections put the mental patient and prisoner on equal footing in their ability to recover directly from public entities.