[No. G006543. Fourth Dist., Div. Three. July 19, 1989.]

WILLIE JENKINS et al., Plaintiffs and Appellants, v. COUNTY OF ORANGE et al., Defendants and Respondents.

COUNSEL

Joseph A. Shuff III for Plaintiffs and Appellants.

Mower, Koeller & Nebeker and Robert C. Carlson for Defendants and Respondents.

OPINION

SONENSHINE, J.—Jana B. individually and as guardian ad litem for her son, Daniel B. and Irene and Willie Jenkins, Daniel's maternal grandparents, appeal a judgment entered against them after demurrers of Beverly Barrington and the County of Orange (the County) were sustained without leave to amend.

 The issue presented is whether a social worker and the County which employs her have absolute immunity from claims of negligence and violation of constitutional rights under 42 United States Code section 1983[1] for acts which took place during the investigative and prosecutorial phases of the social worker's job. We hold they do.

I

Daniel is the son of David and Jana B. When David and Jana divorced, Jana was awarded custody of Daniel who at the time of the underlying suit was six years old. Barrington, an emergency response social worker employed by the County, received a call on Monday, June 16, 1986, alleging Daniel was being abused by his maternal grandfather, Willie Jenkins. That same day, Barrington interviewed Daniel at his preschool. She also saw the child on June 19, and based on these interviews, she contacted the Anaheim Police Department. The child was removed from the preschool and placed in temporary protective custody at Orangewood Children's Home.

An application for petition to declare Daniel a dependent child was initiated. At the hearing on June 24, the court found: (1) There was substantial danger to the physical health of the minor; (2) there were no reasonable means by which the minor's physical or emotional health could be protected without removing the minor from the parents' physical custody; and (3)

---

[1] All further references to section 1983 refer to 42 United States Code.

the minor was to remain in custody at the Orangewood Children's Home until the next court hearing, set for August 6.

On August 6, the petition was dismissed, and Daniel was returned to his mother's custody. On May 12, 1987, the underlying lawsuit was filed. After the respondents successfully demurred, appellants filed a first amended complaint alleging four causes of action: negligence, intentional/negligent infliction of emotional distress, false imprisonment, and violations of constitutional liberties pursuant to section 1983. Appellants alleged respondents "failed and refused to consider and/or investigate allegations that [David's] accusations [of Daniel's molestation] were false and intentionally made with knowledge of their falsity. [Respondents] failed and refused to divulge this evidence . . . to the [superior court] within [respondents'] petition to declare [Daniel] a dependent child." Furthermore, respondents allegedly represented "to the [superior court] that separation and/or removal from [the mother's] home was necessary to protect [Daniel] from potential molestation, despite the fact that the claimed 'suspect,' [Willie Jenkins], did not reside with [Daniel] or his mother."

Appellants did concede, however, that the social worker at all times acted within the scope of her employment. In essence, the complaint claims respondents failed to use due care by not thoroughly investigating the child abuse report and failed to weigh and present all the evidence.

Respondents again demurred; the court sustained the demurrer without leave to amend. Subsequently, a judgment of dismissal was entered. The court found: "[1)] Beverly Barrington (employee of defendant County of Orange) is immune from liability for the conduct complained of . . . [; 2)] There can be no false imprisonment where conduct [is] pursuant to Juvenile Court authority. [Citation.] [; and 3)] The actions complained of in the fourth cause of action [violation of constitutional liberties] are subject to quasi-prosecutorial immunity. [Citation.]"

## II

■ We first note "in reviewing a judgment of dismissal entered upon the sustaining of a demurrer we accept as true all allegations stated in the complaint. [Citation.]" (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 828 [122 Cal.Rptr. 745, 537 P.2d 865].) ■ Moreover, "[i]t is error to sustain a demurrer where a plaintiff has stated a cause of action under any possible legal theory. [Citations.] But it is not an abuse of discretion to sustain a demurrer without leave to amend if there is no reasonable possibility that the defect can be cured by amendment. [Citations.]" (*Von Batsch* v. *Ameri-*

*can.Dist. Telegraph Co.* (1985) 175 Cal.App.3d 1111, 1117 [222 Cal.Rptr. 239].)

### A. IMMUNITY FOR NEGLIGENCE

■ Appellants allege respondents failed to use due care in investigating child abuse reports. They assert the social worker refused and failed to consider all of the evidence and thereby misrepresented information to the juvenile court. These acts were done concededly within the scope of employment.

These allegations are immune from liability. (Gov. Code, § 821.6.)[2] Appellants rely on *Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710 [117 Cal.Rptr. 241, 527 P.2d 865]. They contend: ". . . section 821.6 of the California Government Code provides a public employee with immunity from liability *only* for malicious prosecution and does not immunize the public employee from other claims of misconduct [such as negligence and misrepresentation of evidence]." But this is too broad an interpretation of *Sullivan* which limited its holding and discussion to the lack of immunity for false imprisonment. "Since section 821.6 cannot be interpreted to defeat the common law liability for false imprisonment preserved in section 820.4, the county sheriff remains liable for his alleged knowing imprisonment of appellant." (*Id.,* at p. 722, fn. omitted.)

Other courts have also recognized section 821.6 is not limited to only malicious prosecution actions. In *Citizens Capital Corp.* v. *Spohn* (1982) 133 Cal.App.3d 887 [184 Cal.Rptr. 269], the court determined section 821.6 provided immunity to government officials who published charges of improper collection methods against plaintiff. In *Kayfetz* v. *State of California* (1984) 156 Cal.App.3d 491 [203 Cal.Rptr. 33], the state was sued for publishing a disciplinary action against plaintiff. The court acknowledged the "publication was authorized as part of the statutory scheme and was clearly 'within the scope of [defendant's] employment,' within the meaning of section 821.6." (*Id.,* at p. 498.) "[S]ection 821.6 is not limited to suits for damages for malicious prosecution, although that is a principal use of the statute. [Citations.]" (*Id.,* at p. 497.)

The court in *Blackburn* v. *County of Los Angeles* (1974) 42 Cal.App.3d 175, 178 [116 Cal.Rptr. 622] held a criminal investigation fell within the

---

[2] Government Code section 821.6 states: "A public employee is not liable for injury caused by his [or her] instituting or prosecuting any judicial or administrative proceeding within the scope of his [or her] employment, even if he [or she] acts maliciously and without probable cause."

All further references to section 821.6 refer to the California Government Code.

protection of section 821.6: " 'When the duty to investigate crime and to institute criminal proceedings is lodged with any public officer, it is for the best interests of the community as a whole that [the officer] be protected from harassment in the performance of that duty.' "

Child abuse is a crime. (Pen. Code, § 11165.6.) And Welfare and Institutions Code section 328 imposes a duty upon a social worker to investigate the possibility of child abuse. "Whenever the probation officer has cause to believe that there was or is within the county, or residing therein, a person within the provisions of section 300,[3] the probation officer *shall* immediately make such investigation as he or she deems necessary to determine . . . whether proceedings in the juvenile court should be commenced." (Welf. & Inst. Code, § 328; see also Pen. Code, § 11166, subd. (g), italics added.)

Therefore, Barrington has immunity for her investigation of the child abuse reports pursuant to her statutory duty; she did so "within the scope of [her] employment . . . ." (§ 821.6.) Barrington is also immune from suit for allegedly failing and refusing to consider all of the evidence and thereby misrepresenting information to the juvenile court. ■ Weighing and presenting evidence are prosecutorial functions. As such, these acts are within the ambit of "instituting or prosecuting any judicial or administrative proceeding within the scope of [Barrington's] employment . . . ." (§ 821.6.)

"Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." (Gov. Code, § 815.2, subd. (b).) ■ There is no statute that provides a public entity is liable for its employee's negligence or misrepresentation of evidence although the employee is immune from liability. Consequently, the County is not liable for the alleged injuries resulting from Barrington's alleged negligence or misrepresentation because she has immunity under section 821.6. ■■ ■■ (§ 815.2, subd. (b).)[4]

---

[3] Welfare and Institutions Code section 300, at that time, provided: "Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court:

". . . . . . . . . . . . . . . . . . . .

"(d) Whose home is an unfit place for him [or her] by reason of neglect, cruelty, depravity, or physical abuse of either of his [or her] parents, or of his [or her] guardian or other person in whose custody or care he [or she] is."

[4] Because we hold Barrington and the County have immunity for negligent investigation and misrepresentation of evidence under sections 821.6 and 815.2, subdivision (b), we need not address whether sections 815, 818.8, 820.2, 820.4, 820.8, and 855.6 also provide immunity.

Appellants also argue reversal is required because the trial court relied on *Coverdell* v. *Dept. of Social & Health Services* (9th Cir. 1987) 834 F.2d 758 and *Novoa* v. *County of*

## B. DISMISSAL OF THE FALSE IMPRISONMENT CLAIM

The trial court held "there can be no false imprisonment where conduct [is] pursuant to Juvenile Court authority." ■■■ Appellants, however, urge "legal authority obtained through a *fraud upon the court* is not a basis upon which judicial protection should be granted." Specifically, appellants allege Barrington "withheld information from the juvenile court and assisted in obtaining a court order via the deceitful suppression of facts to the juvenile court." As a result, Daniel was detained from June 24, 1986, through August 6, 1986. But as discussed, *ante,* Barrington and the County enjoy immunity for Barrington's alleged misrepresentation of evidence in court.

■■■ Appellants also propound the trial court's ruling is inapplicable to the period between June 19 and June 24, 1986, because no court order had been issued. Thus, they maintain the minor was falsely imprisoned during this time.

■■■ "False imprisonment is the unlawful violation of the personal liberty of another, the interference being absolutely unlawful and without color of *legal authority.* [Citations.]" (*Novoa* v. *County of Ventura, supra,* 133 Cal.App.3d 137, 142, italics added.) **(7b)** Here, Daniel's detention was within the scope of Welfare and Institutions Code section 300 et seq. In particular, section 305 stated at that time: "A peace officer may, without a warrant, take into temporary custody a minor: (a) Who is under the age of 18 years when such officer has reasonable cause for believing that such minor is a person described in Section 300." Moreover, respondents complied with section 313 by filing a petition for dependency within the required 48 hours (excluding nonjudicial days) after Daniel was taken into custody. Hence, Daniel's detention was under legal authority and cannot be construed as false imprisonment.

---

*Ventura* (1982) 133 Cal.App.3d 137 [183 Cal.Rptr. 736]. They assert their claim is based on negligence whereas *Coverdell* and *Novoa* were based, respectively, on section 1983 and malicious prosecution.

" 'The fact that the action of the court may have been based upon an erroneous theory of the case, or upon an improper or unsound course of reasoning, cannot determine the question of its propriety. . . . [A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' [Citation.]" (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19 [112 Cal.Rptr. 786, 520 P.2d 10].)

## C. Immunity Against Section 1983 Claims

The trial court determined "the actions complained of in the fourth cause of action [violation of constitutional liberties under section 1983] are subject to quasi-prosecutorial [or absolute] immunity."

■ Appellants contend respondents negligently investigated allegations of Daniel being abused, took Daniel into custody, misrepresented facts to the juvenile court, and failed and refused to consider all evidence including exculpatory evidence. They contend these actions, admittedly done within the scope of employment, affected the "arbitrary deprivation of the freedoms, rights, and privileges guaranteed to [Daniel] and [his mother] by the California and [United States] Constitution[s]."

Federal cases indicate social workers enjoy absolute immunity from section 1983 claims for improperly weighing and presenting evidence. Such actions fall within the prosecutorial phase of their employment. (*Meyers* v. *Contra Costa County Dept. of Soc. Serv.* (9th Cir. 1987) 812 F.2d 1154; *Hennessey* v. *State of Wash., Dept. of Social* (E.D.Wash. 1985) 627 F.Supp. 137; *Whelehan* v. *County of Monroe* (W.D.N.Y. 1983) 558 F.Supp. 1093.)

In *Whelehan,* plaintiffs alleged the social worker misrepresented facts and failed to disclose or consider all of the evidence during the initiation and pursuit of child dependency proceedings. The court concluded "that plaintiffs' claim regarding the conduct of the [social worker], be it characterized as one for malicious prosecution or otherwise, must be dismissed" based on absolute immunity. (558 F.Supp. at p. 1101, fn. omitted.) "[T]he roles of the [social workers] are sufficiently like the role of a prosecutor to warrant coverage by absolute immunity . . . ." (*Id.,* at p. 1098.)

Accordingly, we hold Barrington has absolute or prosecutorial immunity against the alleged misrepresentation of facts and failure to disclose or consider all evidence since such acts are "like [those] of a prosecutor" (558 F.Supp. at p. 1098) and were done within the scope of her employment.

Courts have applied absolute immunity to section 1983 claims against social workers for the investigative phase of their job, i.e., investigating child abuse reports and taking a child into custody without a court order. (*Mazor* v. *Shelton* (N.D.Cal. 1986) 637 F.Supp. 330; *Whelehan* v. *County of Monroe, supra,* 558 F.Supp. 1093.) But the court in *Hodorowski* v. *Ray* (5th Cir. 1988) 844 F.2d 1210, 1214 held social workers have only qualified immunity against section 1983 claims when they take a child into custody without a court order "[b]ecause the [social workers'] actions in taking

possession of the children [are] not integral to the judicial process . . . ." The *Hodorowski* court established the test for applying qualified immunity to a social worker—the objective reasonableness of the action. (*Id.*, at p. 1214.) "We think that qualified immunity, not absolute immunity, strikes the better balance between" (*id.*, at p. 1216) the family's right to privacy and the state's interest in discovering and preventing child abuse.

Neither appellants nor respondents cite *Hodorowski* which was decided a year before the United States Supreme Court, in *DeShaney* v. *Winnebago Soc. Serv.* (1989) 489 U.S. 189, 197 [103 L.Ed.2d 249, 259, 109 S.Ct. 998], held "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause [of the Fourteenth Amendment]." *DeShaney* noted the due process clause imposes no duty on a social worker or the state to intervene to protect a child whom they know or have reason to know is being abused. (*Id.*, at p. 201 [103 L.Ed.2d at pp. 262-263.) Effectively, a child has protection from abuse *only when* the state, via a social worker, *chooses* to intervene.[5]

In the case before us, appellants concede Barrington acted within the scope of her employment when she failed to thoroughly investigate the reports and took Daniel into custody without a court order. Should we hold a state or social worker acting within the scope of his or her employment is not absolutely immune from suits arising from the voluntary intervention to protect a child, we would indirectly eliminate the protection afforded to children. The state's interest in preventing child abuse will be diminished due to fear of retaliatory suits. The state and its social workers would not take the child into custody until the inflicted injuries could be "recorded" to meet the "objectively reasonable" test of qualified immunity or until they obtain a court order which ensures absolute immunity. Such a result negates the purpose of child protective services by postponing prevention of further abuse to avoid liability.

 This court strikes a balance between a family's right to privacy and a child's right not to be abused. Considering the grave implication of *DeShaney* and the California statutes on child abuse, we agree with *Whelehan* and *Mazor*, i.e., social workers enjoy absolute or prosecutorial immunity if they act within the scope of their employment in investigating reports and taking the child into custody without a court order.

 In regard to the County's liability under section 1983, we find the County enjoys absolute immunity. The *Whelehan* court "affirm[ed] the

---

[5] Welfare and Institutions Code section 305, discussed *ante*, imposes no duty on the social worker to intervene by taking the child into custody.

existence of an absolute immunity of municipal bodies against liability [under section 1983] for acts performed within the scope of prosecutorial-type duties." (558 F.Supp. at p. 1105.) In addition, we recognize absolute immunity applies to municipal bodies when the employee acts within the scope of employment during the investigative phase of his or her duty. "[T]o allow charges of prosecutorial [or investigative] malfeasance to survive the pleading stage would frustrate the compelling public need for . . . protection of endangered children." (*Id.,* at p. 1107.) Because Barrington performed her prosecutorial and investigative duties within the scope of her employment, the County enjoys absolute immunity from appellants' claim.

Judgment affirmed.

Scoville, P. J., and Parslow, J.,* concurred.

Appellants' petition for review by the Supreme Court was denied October 12, 1989.

---

* Assigned by the Chairperson of the Judicial Council.